Bill A. Corbin Calhoun County Attorney Blountstown
QUESTION:
Is the Calhoun County Board of County Commissioners authorized to compensate the successful contestant for the office of clerk of the circuit court for a 2-month period prior to the qualification of said clerk when the incumbent clerk was holding over and performing the duties of the office pending the outcome of the election contest?
SUMMARY:
In the absence of contrary judicial determination, it would appear that the board of county commissioners would not be authorized to compensate the successful contestant for the office of clerk of the circuit court for the period prior to the time said clerk qualified for office if the incumbent clerk has been holding over and performing the duties of the office pending the outcome of an election contest.
Your inquiry is based upon the following factual situation which you outlined in your letter:
 The 1976 General Elections in Calhoun County, Florida, for the office of the Clerk of the Circuit Court resulted in the re-election of James A. Peacock, Jr., the incumbent Clerk, over Willie D. Wise by a slim margin. Subsequently, and prior to January 3, 1977, Mr. Wise filed a timely challenge and suit regarding the validity of certain election procedures and the results of the election. During the pendency of this suit, Mr. Peacock's original term of office expired, and he was reinstated as the duly-elected Clerk on or about January 3, 1977. On February 14, 1977, the Circuit Court of the Fourteenth Judicial Circuit in Calhoun County invalidated all absentee ballots cast in that election and ruled that Mr. Wise was the duly-elected Clerk of the Circuit Court. Mr. Wise's commission for that office was signed by Governor Reubin Askew on February 28, 1977, and Mr. Wise assumed the actual duties and obligations of that office as of February 28, 1977. Mr. Peacock fulfilled those duties and obligations from January 3, 1977, to February 28, 1977, and was duly compensated therefor. Mr. Wise requests payment of back salary as the duly-elected Clerk of the Circuit Court, in the approximate sum of $3,300 for the period January 3, 1977, to February 28, 1977.
Following the receipt of your letter, Mr. Wise wrote to this office for an opinion on this matter and advised that the board of county commissioners paid him the full amount of the disputed salary ($3,300) on March 15, 1977. Therefore, it would appear that your question might more appropriately be cast in the past tense,i.e., was the board of county commissioners authorized to pay Mr. Wise the monetary amount in question.
Section 5(b), Art. II, State Const., states, in pertinent part, that `[e]ach state and county officer . . . shall . . . continue in office until his successor qualifies.' This section was derived from a substantially similar provision found at s. 14, Art. XVI of the 1885 Constitution:
 All state, county and municipal offices shall continue in office after the expiration of their official terms until their successors are duly qualified.
In State ex rel. Landis v. Bird, 163 So. 248, 264 (Fla. 1935), the court observed that s. 14, Art. XVI, `prescribes a duty as well asa substantial right of an incumbent at the expiration of his official term to continue in office until his successor is `duly qualified." (Emphasis supplied.) See also State ex rel. Hodges v. Amos, 133 So. 623, 625 (Fla. 1931), noting that this section contemplates that an incumbent `shall continue in office, or perform the official duties of the office after the expiration of his official term . . . until his successor is duly qualified. . . .'
Because of his constitutional duty to hold over until his successor was duly qualified, an incumbent officer was deemed to be a de jure officer until the qualification of his successor. State ex rel. Landis v. Bird, supra; Tappy v. State ex rel. Byington, 82 So.2d 161 (Fla. 1955). See also State ex rel. Davis v. Collins, 134 So. 595, 599 (Fla. 1931) (Ellis, J., concurring), noting that an incumbent entitled to hold over until his successor is duly qualified is both a de jure and a de facto officer; and State ex rel. Hawthorne v. Wiseheart, 28 So.2d 589, 593 (Fla. 1947), stating that `[t]he difference between the authority of a de facto officer and that of a de jure officer is that one rests on right and the other rests on reputation,' and further observing that `[a] de jure officer, in other words, has the lawful title without possession, while the de facto officer has possession and performs the duties under color of title without being technically qualified to act.'
Moreover, under the general rule, where the legal incumbent of an office is authorized by law to hold over at the expiration of the term until his successor is elected and qualified, the period of his holding over is as much a part of his tenure of office as the regular period fixed by law. 67 C.J.S. Officers s. 48(c), p. 206. An officer holding over under such circumstances `who, in good faith, performs the duties appertaining to the office, is legally entitled to the salary belonging thereto.' McQuillin MunicipalCorporations s. 12.202, p. 115; 63 Am. Jur.2d Public Officers andEmployees s. 363, p. 847; Mason County v. Condon, 133 S.W.2d 527
(Ky. 1939); City of Berryville v. Binam, 264 S.W.2d 421 (Ark. 1954); Mahoney v. City of Biddleford, 155 A. 560 (Me. 1931).
In Masters v. State ex rel. Bell, 131 So. 773 (Fla. 1931), the court followed the principles of law outlined above and ruled that a de jure officer entitled under s. 14, Art. XVI, State Const. 1885, to hold over after the expiration of his term until a successor had duly qualified was entitled to compensation during the holding over period. The court held that this rule applied even where the period of holding over was prolonged because of an election contest, at least in the absence of fraud or bad faith.Accord: Attorney General Opinion 046-318, Biennial Report of the Attorney General, 1945-1946, p. 203, concluding that a de jure holdover probation officer who had not abandoned or forfeited her claim to the office was entitled to the pay of such office until her successor was appointed and qualified.
The facts set forth in Masters are substantially the same as those presented by your inquiry. In each case an incumbent officeholder remained in office following the expiration of his term and performed the duties of the office pending the outcome of an election contest. Likewise in each situation the incumbent's opponent eventually emerged victorious in the election contest and the incumbent was ousted from office. It seems clear, therefore, that under the circumstances outlined in your letter, the incumbent holdover clerk (Peacock) was entitled to the compensation of the office until his successor (Wise) duly qualified for said office. Cf. s. 28.09, F. S., providing that in the case of vacancy occurring in the office of a clerk of the circuit court by death, resignation, or other cause, the judge of that court shall appoint a clerk ad interim, who shall assume all the responsibilities, perform all the duties, and receive the same compensation for the time being as if he had been duly appointed to fill the office.
The remaining consideration, therefore, is whether or not the board of county commissioners was authorized to compensate Mr. Wise in addition to compensating Mr. Peacock. My research discloses no Florida cases which has determined whether or not the successful contestant in an election contest is entitled to compensation for the period during which the incumbent held over and performed the duties of the office pending the outcome of the contest. However, for the following reasons, I believe that in the absence of judicial determination otherwise, this question should be answered in the negative.
Under the general rule, an incumbent who is required to hold over until the qualification of his successor remains in office until his appointed or elected successor qualifies as required by law. McQuillin Municipal Corporations s. 12.110, p. 474. In State exrel. Landis v. Bird, at 264, the court noted that the words `duly qualified' as used in s. 14, Art. XVI, supra, contemplated the giving of bond or the taking of the oath of office in addition to a legal election or appointment. See also State ex rel. Coe v. Lee, 3 So.2d 497, 499 (Fla. 1941), stating that `[t]he purpose of constitutional or statutory provisions authorizing public officers to hold over is to prevent a hiatus in the government pending the time when a successor may be chosen and inducted into office.' (Emphasis supplied.) Thus, if an incumbent's successor is validly elected or appointed, but fails to qualify (by subscribing to the oath of office and giving bond required as by law), then the incumbent is required to remain in office until the lawfully declared successor has qualified. Shaw v. Baker, 298 P.2d 250
(Kan. 1956); City of Berryville v. Binam, supra; Mason v. Condon,supra; State ex rel. Masters v. Bell, supra; People ex rel. Ewell v. Robson, 1 N.Y.S.2d 476, 480 (Sup.Ct.App. Div. 1937). Cf. s.114.01(1)(h), F. S., providing that a vacancy in office shall occur, `[u]pon the failure of a person elected or appointed to office to qualify for office within 30 days from the commencement of the term of office,' and s. 3, Art. X, State Const., providing that a vacancy in office shall occur upon the failure of an elective or appointive officer to qualify within 30 days from the commencement of the term.
Moreover, as has been previously noted, although the holdover period of an incumbent is as much part of his tenure of office as the regular period fixed by law, since the term of office is distinct from the tenure of an officer,
 the term of office is not affected by the holding over of an incumbent beyond the expiration of the term for which he was appointed; and a holding over does not change the length of the term but merely shortens the term of his successor. [67 C.J.S. Officers s. 48(c), p. 206; emphasis supplied.]
See also Graham v. Lockhart, 91 P.2d 265 (Ariz. 1939). Thus, until the due qualification of the successor, the office is vacant as to the new term, in the sense that any office is vacant when not occupied by a person chosen to fill it for such term. See State exrel. Hodges v. Amos, 133 So. 623, 625 (Fla. 1931), and cf. s.114.01(1)(h) and s. 3, Art. X, supra. Application of these principles to your inquiry reveals that Wise's term and tenure of office did not actually commence until February 28, 1977, when he was able to qualify (assuming that he subscribed to the oath of office and gave the required bond on the date of his commission). Thus, since under the law Wise's term and tenure of office did not begin prior to February 28, 1977, it would seem that he would not be entitled to compensation for a period prior to that date.
Furthermore, at least one Florida court has opined that public bodies should not be compelled to pay twice for the performance of one service. See Ball v. State, 146 So. 830 (Fla. 1933). The Ball
case involved a mandamus proceeding by an unlawfully removed town marshal to compel the payment of his salary which had been paid to a de facto marshal. The court denied the de jure marshal's claim because he had failed to first establish his legal right to the office. The court quoted extensively from an Oregon case — Selby v. City of Portland, 12 P. 377 (Ore. 1888) — which held in part:
 The exigencies of society require efficient performance of official duties, and to secure such performance prompt payment therefor is an essential requisite. Disbursing officers of municipalities are not clothed with judicial power to determine whether or not a person vested with the indicia of an office and performing the duties of such office is, in fact, a de jure officer where there has been no judicial determination of such fact. To require the public authorities to withhold the pay of an incumbent or public officer until a judicial decision, or pay the same at the peril of having to pay the same a second time, would be a source of much embarrassment and greatly tend to impair the efficiency of the public service.
Accordingly, it would appear that the Board of county Commissioners of Calhoun County was neither required nor authorized by law to compensate Mr. Wise for the period in which the holdover officer, Mr. Peacock, was performing the duties of the office. In this regard, I must direct your attention to s.129.07, F. S. (providing that it is unlawful for the board of county commissioners to expend or contract for the expenditure in any fiscal year of more than the amount budgeted for each item in each county fund except as provided therein; and further providing that the members of the board of county commissioners voting and contracting for such amounts shall be liable on their bonds for the amount of such excess indebtedness); s. 129.08, F. S. (providing that any county commissioner who knowingly and willfully votes to, inter alia, pay an illegal charge against the county or to pay any claim against the county not authorized by law shall be guilty of a misdemeanor); and s. 129.09, F. S. (imposing personal liability upon any clerk of the circuit court, acting as county auditor, who shall pay any illegal charge against the county or pay any claim against the county not authorized by law or county ordinance). Whether a particular expenditure is authorized by law and whether there are funds properly budgeted or appropriated which may be used for this expenditure are ultimately questions for the Auditor General. Cf. AGO's 071-160, 075-299.
Prepared by: Patricia R. Gleason, Assistant Attorney General